

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:20cr78 |
| | ) | |
| MALCOLM MCKINNEY, | ) | |
| | ) | |
| *Defendant.* | ) | |

## STATEMENT OF FACTS

By signing below, the parties stipulate that the allegations in the pending criminal indictment and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt.

1. From in or about April 2018 and continuing through July 2018, the exact dates being unknown, MALCOLM MCKINNEY and other co-conspirators both known and unknown, devised a scheme and artifice to defraud the Navy Federal Credit Union (NFCU) and to obtain money and property owned by and under the custody and control of NFCU, a financial institution with deposits insured by the National Credit Union Administration (NCUA).

2. Raven Dixon played a central role in the conspiracy and scheme and artifice to defraud. Other co-conspirators fraudulently obtained the personally identifying information of various victims, including their name, social security number, date of birth, and address. These co-conspirators assumed the identity of the victim in order to open a bank account at NFCU. Once the account was opened and online login credentials were obtained, the co-conspirators sent the identity information to Dixon via text message.



3. Dixon took the stolen identity information and used it to access the NFCU system online and submit false and fraudulent applications for various auto loans. Dixon scoured websites such as Auto Trader seeking to find cars for sale. Once she found a suitable car, she used its information and submitted a loan application to NFCU. She recruited friends and acquaintances to act as the "sellers" of the vehicles. Once the loan was approved, Dixon would have NFCU issue a check for the auto sale amount made payable to the name of the victim and to one of the "sellers" she recruited.

4. Once the loan check was issued, another co-conspirator posed as the identity theft victim and entered a local NFCU branch in the Eastern District of Virginia to retrieve the check. Using a fake identification card, the co-conspirator would pose as the victim and get the check. That co-conspirator then provided the loan check to the auto "seller" who took it to yet another NFCU branch in the Eastern District of Virginia and cashed the check. The co-conspirators would then split the loan check proceeds amongst themselves.

5. On at least four occasions, MALCOLM MCKINNEY provided stolen identities to Raven Dixon to use in procuring fraudulent auto loans through NFCU. MCKINNEY provided the information to Dixon via text message and was paid a portion of the proceeds.

6. On or about June 22, 2018, MALCOLM MCKINNEY sent a text message to Raven Dixon containing the personally identifying information of victim J.B. On the same day, Dixon used the personally identifying information of J.B. to successfully apply for a loan in the amount of $21,500. Thomas Jules Rogers, another co-conspirator, entered the NFCU branch on



Newtown Road in Norfolk, Virginia, used a counterfeit driver's license in the name of J.B. to obtain the loan proceeds and thereafter the funds were distributed amongst the co-conspirators, including MCKINNEY.

7. On or about June 25, 2018, MCKINNEY sent a text message to Raven Dixon containing the personally identifying information of E.J. On or about June 26, 2018, Dixon used the personally identifying information of E.J. to successfully apply for an automobile loan in in the amount of $18,000 and the check was cashed on the same date. The proceeds distributed amongst the co-conspirators, including MCKINNEY.

8. On or about June 27, 2018, MCKINNEY sent a text message to Raven Dixon containing the personally identifying information and NFCU account information of C.Y. The next day, Dixon used this information to successfully apply for an automobile loan in C.Y.'s name in the amount of $24,000. The same day, the check was cashed and the proceeds distributed amongst the co-conspirators, including MCKINNEY.

9. On or about July 23, 2018, MCKINNEY sent a text message to Raven Dixon containing the personally identifying information and NFCU account information of J.D. The same day, Dixon used this information to successfully apply for a loan in J.D's name in the amount of $12,000. The same day, the check was cashed and the proceeds distributed amongst the co-conspirators, including MCKINNEY.

10. The overall conspiracy is responsible for a number of transactions similar to the ones referenced above. The government is currently aware of at least $305,580 in loss and attempted loss to NFCU as a result of this fraud scheme.



11. The acts taken by the defendant, MALCOLM MCKINNEY, in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offense charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____
Joseph L. Kosky
Assistant United States Attorney



After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, MALCOLM MCKINNEY, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

MALCOLM MCKINNEY
Defendant

I am Paul Driscoll, MALCOLM MCKINNEY's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Paul Driscoll, Esquire
Attorney for MALCOLM MCKINNEY

